*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

| | | |
|---|---|---|
| *DAVID N. WILGUS, et al.,* | ) | |
| | ) | |
| *Plaintiffs* | ) | |
| | ) | |
| *v.* | ) | *Civil No. 08-225-P-H* |
| | ) | |
| *F/V SIRIUS, INC.,* | ) | |
| | ) | |
| *Defendant* | ) | |

*MEMORANDUM DECISION ON MOTION TO PRECLUDE AND RECOMMENDED*
*DECISION ON PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT*

The plaintiffs in this consolidated case move to preclude the testimony of James T. Simonitsch, designated by the defendant as an expert witness, and for partial summary judgment on two affirmative defenses and on Count II of the complaint. I deny the Simonitsch motion and recommend that the court grant the summary judgment motion in part.

**I. Motion to Exclude Testimony**

The plaintiffs seek to exclude Simonitsch's testimony because, they assert, his opinions "are unreliable because they are not scientifically sound and because some of them are based on inaccurate 'facts.'" Plaintiffs' Motion to Preclude the Defendant's Expert Witness, James T. Simonitsch, Under Daubert and Kumho Tire ("Simonitsch Motion") (Docket No. 19) at 1. They attack the following four "significant opinions" included in the defendant's designation of Simonitsch:

> 1. On "subsequent voyages prior to the sinking, [the vessel] was in a seaworthy condition. The owners had taken all necessary steps to ensure that the vessel was in a tight, staunch condition."

1

2.  "It is more likely than not that the vessel's hull developed a leak suddenly, either by striking a submerged object or an unknown failure of one of the through-hull fittings."

3.  "The leak must have developed through the aft part of the vessel that had been inspected in the spring of 2005, just prior to the sinking."

4.  "Because of the banging of the [fishing gear] doors and the noise from the engine at the same time, along with other machinery running when hauling back, it could be as likely as anything else that the vessel, again, hit a submerged object, or 'popped' a plank, which either caused a leak or a serious failure of one of the through-hulls that could not have been heard and/or determined sooner."

*Id.* at 2-3 (citations omitted).

Rule 702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.  Under Rule 702, "it is the responsibility of the trial judge to ensure that an expert is sufficiently qualified to provide expert testimony that is relevant to the task at hand and to ensure that the testimony rests on a reliable basis."  *Beaudette v. Louisville Ladder, Inc*., 462 F.3d 22, 25 (1st Cir. 2006).  With respect to reliability:

In *Daubert,* the Supreme Court set forth four general guidelines for a trial judge to evaluate in considering whether expert testimony rests on an adequate foundation: (1) whether the theory or technique can be and has been tested; (2) whether the technique has been subject to peer review and publication; (3) the technique's known or potential rate of error; and (4) the level of the theory or technique's acceptance within the relevant discipline.  However, these factors do not constitute a definitive checklist or test, and the question of admissibility must be tied to the facts of a particular case.

*Id.* (citations and internal quotation marks omitted); *see also, e.g., Zachar v. Lee*, 363 F.3d 70, 76 (1st Cir. 2004) ("The court's assessment of reliability is flexible, but an expert must vouchsafe

2

the reliability of the data on which he relies and explain how the cumulation of that data was consistent with standards of the expert's profession.") (citation and internal quotation marks omitted).

As the First Circuit has observed, "*Daubert* does not require that the party who proffers expert testimony carry the burden of proving to the judge that the expert's assessment of the situation is correct." *United States v. Mooney*, 315 F.3d 54, 63 (1st Cir. 2002) (citation and internal quotation marks omitted). "It demands only that the proponent of the evidence show that the expert's conclusion has been arrived at in a scientifically sound and methodologically reliable fashion." *Id*. (citation and internal quotation marks omitted). That said, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co.*, 161 F.3d 77, 81 (1st Cir. 1998) (citation and internal quotation marks omitted).

*1. Simonitsch's Second Opinion.* The plaintiffs assert that the facts upon which the second and third of the above-described "significant opinions" are based are wrong. Simonitsch Motion at 3-4. Specifically, they attack "the factual basis for opinion #2 . . . that the crew was 'continually inspecting the holds of the vessel during icing and storing the fish,' and 'the fact that the water seemed to have rushed into the fish hold.'" *Id*. at 3. They assert that neither Garrett Thorbjornson nor David Wilgus said that they were "continually" inspecting the holds, "[n]or does that information appear in any other documents that Mr. Simonitsch reviewed." *Id*. They assert the same about the statement that "the water seemed to have rushed into the fish hold." *Id*.

3

However, contrary to the plaintiffs' argument, neither of these assertions is necessarily "untrue," *id*. at 4, nor are they the sole factual basis cited for Simonitsch's second opinion. The use of the word "continually" to describe the crew's inspections of the fishholds may have been unwarranted, but, as the defendant points out, Defendant's Objection to Plaintiffs' Motion to Preclude Defendant's Expert Witness, James T. Simonitsch, From Testifying ("Simonitsch Opposition") (Docket No. 32) at 3-4, the statements of Garrett Thorbjornson and Wilgus do establish that they went into the hold many times during the two and one-half days at sea before the sinking, and specifically that they went into the fishhold three times a day. Simonitsch's use of the word "continually" may subject his opinion to attack on cross-examination, but it does not render his opinion based on that fact, and others, inadmissible.

The second fact attacked by the plaintiffs – that water "rushed into" the fishhold -- is a conclusion reasonably drawn by Simonitsch, as demonstrated by the defendant at pages 5-8 of its opposition. That conclusion is not necessarily "untrue." Simonitsch could reasonably conclude that, given the testimony that, prior to the bilge alarms sounding, no excessive water was in the bilge and that within a half hour the vessel sank despite four bilge pumps operating, water entered the bilge rapidly. Also significant is the fact that the factual assertions attacked by the plaintiffs follow the word "[a]lso" in the designation. Defendant's Designation of Expert Witness ("Designation") (Exh. A to Simonitsch Motion) at 5. That adverb incorporates into the foundation for Simonitsch's second opinion four pages of factual assertions that precede the two assertions that are challenged. That opinion may be expressed at trial.

*2. Simonitsch's Third Opinion.* The plaintiffs assert that the "factual basis for opinion #3 is that 'the vessel rolled to port and then sank stern first," and that this is insufficient in the absence of "any explanation of how [Simonitsch] got from the vessel rolling to port and sinking

4

stern first to the leak developing in the aft part of the vessel." Simonitsch Motion at 4. Despite the questions posed by the plaintiffs in their motion, *id*., Simonitsch's opinion does not necessarily imply that the vessel had "a watertight compartment in the back." *Id*. at 5. If the rear of the vessel was already lower than the front, "the laws of physics" invoked by the plaintiffs, *id*. at 4, are perfectly compatible with water flowing into an aft compartment that was not watertight.

The plaintiffs argue that the defendant "has not offered any facts or expert opinion as to exactly how much lower in the water the stern of the vessel allegedly was than the bow." Plaintiffs' Reply to Defendant's Objection to Motion to Preclude ("Simonitsch Reply") (Docket No. 41) at 6. The precise degree by which the vessel's stern was lower than its bow is not necessary in order to conclude that the vessel's natural "squat" while underway could make a submerged object strike the rear of the hull first without having struck the front. Additionally, if that object struck the rudder, the leak would obviously develop in the aft of the vessel. The plaintiffs' motion to exclude Simonitsch's third opinion fails.

*3. Simonitsch's First and Fourth Opinions.* The plaintiffs' attacks on Simonitsch's first and fourth opinions are far more general. They assert that Simonitsch "gave no significant basis for any of the opinions other than perhaps anecdotal evidence based on experience." Simonitsch Motion at 5-6. They contend that

> [n]one of Mr. Simonitsch's opinions can be challenged objectively. He performed no testing, did not inspect the vessel, and did not attempt to use any type of mathematical model using the vessel's key statistics . . . to validate his 'opinions.' He referred to no scientific manuals and showed no calculations.

*Id*. at 6. They do not explain how Simonitsch could inspect a vessel that sank at sea or how he could perform testing on that vessel. Contrary to the plaintiffs' contentions, not all expert

opinion testimony must be based on tests, mathematical calculations, or scientific manuals in order to be admissible.  Nor is an expert required, as the plaintiffs assert, *id*. at 7, to discuss every hypothesis related to his opinion, other than those that he has adopted as his own.

Much of the plaintiffs' attack on Simonitsch's designation (they apparently chose not to take his deposition) goes to the weight of his opinions rather than their admissibility.  In no manner does that attack justify the exclusion of any and all testimony by Simonitsch, even were I to agree with their challenges to the four specific opinions discussed above.  I decline the plaintiffs' request, raised for the first time in their reply memorandum (to which the defendant has no opportunity to respond), to rule at this time that Simonitsch may not express at trial a particular opinion which they assert was not included in the original or supplemental disclosures of his opinions.  Simonitsch Reply at 6-7.  That is a matter more appropriately considered by the trial judge at the time of trial.

*4. Defendant's Supplemental Designation.*  The plaintiffs also attack the defendant's Supplemental Designation of Expert Witness and a letter from Simonitsch dated February 26, 2009, responding to the substance of the motion to exclude his testimony.  *Id*. at 1.  They ask the court to "strike these documents as untimely and as hearsay."  *Id*.  Again, this is an argument made at a point in the proceedings where the defendant has no opportunity to respond.  In any event, I have not relied on the letter in considering the plaintiffs' motion to exclude.  The letter may not be admissible at trial, if the defendant were to offer it, but again, that is a matter for the trial judge to decide.

A supplemental expert designation, on the other hand, is contemplated by the rules of civil procedure.  Fed. R. Civ. P. 26(a)(2)(D); 26(e).  The supplemental designation in this case is dated February 4, 2009.  Defendant's Supplemental Designation of Expert Witness (Exh. B to

Simonitsch Opposition) at 3.   While that document was more than likely generated in response to the plaintiffs' motion to exclude, which is dated January 30, 2009, Simonitsch Motion at 8, that fact alone does not make it unacceptable.

Since I have not agreed with the plaintiffs that there is any fatal flaw in the defendant's initial designation of Simonitsch, the court will not be using the supplemental designation to "fix" any problem in the initial report, a basis on which the plaintiffs contend that it must be excluded.  Simonitsch Reply at 2-3.  There is also no "missed deadline" here.  *Id*. at 2.  The supplemental designation does address some of the questions raised in the plaintiffs' motion to strike, and that seems to be precisely what is contemplated by Fed. R. Civ. P. 26(e)(2): "additions or changes to [information given in an expert's report] must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due[,]" that is, 30 days before trial.  This case has not yet been placed on a trial list, Docket No. 38, so the 30-day limit is not in play.  The plaintiffs' request to strike the supplemental designation is denied.

## II.  Motion for Partial Summary Judgment

### A.  Summary Judgment Standard

*1.  Federal Rule of Civil Procedure 56.*   Summary judgment is appropriate only if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Santoni v. Potter*, 369 F.3d 594, 598 (1st Cir. 2004).  "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party."  *Rodríguez-Rivera v. Federico Trilla Reg'l Hosp. of Carolina*, 532 F.3d 28, 30 (1st Cir. 2008) (quoting *Thompson v. Coca-Cola Co.*, 522 F.3d 168, 175 (1st Cir. 2008)).  "A fact is material if it has the potential of determining the outcome of the litigation."  *Id*. (quoting *Maymi v. P.R. Ports Auth.*, 515 F.3d 20, 25 (1st Cir.

2008)).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. *Santoni,* 369 F.3d at 598. Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); Fed. R. Civ. P. 56(e). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." *In re Spigel*, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal punctuation omitted).

*2. Local Rule 56*. The evidence that the court may consider in deciding whether genuine issues of material fact exist for purposes of summary judgment is circumscribed by the Local Rules of this District. *See* Loc. R. 56. The moving party must first file a statement of material facts that it claims are not in dispute. *See* Loc. R. 56(b). Each fact must be set forth in a numbered paragraph and supported by a specific record citation. *See id*. The nonmoving party must then submit a responsive "separate, short, and concise" statement of material facts in which it must "admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts[.]" Loc. R. 56(c). The nonmovant likewise must support each denial or qualification with an appropriate record citation. *See id*. The nonmoving party may also submit its own additional statement of material facts that it contends are not in dispute, each

8

supported by a specific record citation.  *See id*.  The movant then must respond to the nonmoving

party's statement of additional facts, if any, by way of a reply statement of material facts in

which it must "admit, deny or qualify such additional facts by reference to the numbered

paragraphs" of the nonmovant's statement.  *See* Loc. R. 56(d).  Again, each denial or

qualification must be supported by an appropriate record citation.  *See id*.

Failure to comply with Local Rule 56 can result in serious consequences.  "Facts

contained in a supporting or opposing statement of material facts, if supported by record citations

as required by this rule, shall be deemed admitted unless properly controverted."  Loc. R. 56(f).

In addition, "[t]he court may disregard any statement of fact not supported by a specific citation

to record material properly considered on summary judgment" and has "no independent duty to

search or consider any part of the record not specifically referenced in the parties' separate

statement of fact."  *Id*.; *see also, e.g., Sánchez-Figueroa v. Banco Popular de Puerto Rico*, 527

F.3d 209, 213-14 (1st Cir. 2008).

## B.  Factual Background

On July 13, 2005, the defendant owned and operated the fishing vessel F/V SIRIUS.

Statement of Material Facts in Support of Plaintiffs['] Motion for Partial Summary Judgment

("Plaintiffs' SMF") (Docket No. 21) ¶ 1; Defendant's Opposing Statement of Material Facts

("Defendant's Responsive SMF") (Docket No. 34) ¶ 1.  On that date, Edward Thorbjornson

owned a majority of the corporate stock of the defendant and was its director, Gary Thorbjornson

was its president, and Travis Thorbjornson was its secretary/treasurer.  *Id*. ¶ 2.

At the time of her sinking, the F/V SIRIUS was a wooden-hulled 47-year-old commercial

fishing vessel.  *Id*. ¶ 3.  She had been purchased by the defendant in 1980.  *Id*.  She was built in

1957 and rebuilt in 1995 at a cost of approximately $90,000.  Defendant's Statement of

Additional Material Facts ("Defendant's SMF") (included in Defendant's Responsive SMF beginning at 5) ¶ 20; Plaintiff[]s['] Reply to: Defendant's Opposing Statement of Material Facts ("Plaintiffs' Responsive SMF") (Docket No. 39) ¶ 29.  The rebuilding work, which took about six months, included a new pilot house, a rebuilt engine, new gallos rings, a new winch, and a new net reel.  *Id.* ¶ 31.  The vessel had new planks, new top timbers, and new decking.  *Id.*  All of the fuel tanks were taken out and fiberglassed, so that there would be no concern about wearing or leaking.  *Id.*  All of the bilges were thoroughly cleaned.  *Id.*

The most recent inspection and/or survey of the F/V SIRIUS by a professional marine surveyor took place in October 2002.  Plaintiffs' SMF ¶ 4; Defendant's Responsive SMF ¶ 4.  In May and June 2005, the F/V SIRIUS was hauled out at Lyman and Moss Boatyard and work was performed on the vessel by Travis, Gary, and Eddy Thorbjornson.  *Id.* ¶ 5.  At this time, the defendant put sheathing on the outside of the boat where the "doors" of the fishing gear come up. Defendant's SMF ¶ 38; Plaintiffs' Responsive SMF ¶ 38.  Gary and Travis sanded the entire hull and painted it.  *Id.* ¶ 41. While sanding and painting, they would recaulk any planking that needed it.  *Id.* ¶ 42.  They checked the vessel for any maintenance and repairs necessary to keep it in good condition for fishing. *Id.* Other work done on the vessel included checking and repacking the stuffing boxes, replacing bolts on the stuffing boxes, checking the wheel and shaft, checking the rudder post, and checking all of the through-hull fittings where there might possibly be leaks. *Id.* ¶ 43.

In early July 2005, the F/V SIRIUS made a fishing trip prior to the trip in which she sank.  Plaintiffs' SMF ¶ 6; Defendant's Responsive SMF ¶ 6.  The crew during this trip was Captain Gary Thorbjornson and his son Garrett Thorbjornson.  *Id.*

While the F/V SIRIUS was docked in Port Clyde between this trip and the trip in which she sank, a diver, Jamie Keizer, went into the water and dove under the vessel to examine the hull and wheel of the vessel. *Id.* ¶ 12. After diving under the vessel the diver spoke with Gary Thorbjornson. *Id.* During this docking, Travis Thorbjornson was on the vessel and Edward Thorbjornson was within 25 feet on the vessel, on the dock. *Id.* ¶ 13. While the F/V SIRIUS was in port, no repairs, alterations, or modifications were performed on the vessel, other than routine maintenance. *Id.* ¶ 14.[1]

The F/V SIRUIS departed on her last trip on or about July 10, 2005. *Id.* ¶ 15. She carried a crew of Captain Gary Thorbjornson, deckhand Garrett Thorbjornson, and deckhand David Wilgus. *Id.* On the evening of the third day of this trip, the bilge alarm went off. *Id.* ¶ 16. Prior to the alarm going off, nothing unusual occurred, and the F/V SIRIUS did not hit anything, was not hit by anything, and made no loud and unusual sounds. *Id.* ¶¶ 17-17 [sic]. After the bilge alarm went off, Garrett Thorbjornson observed that the ice in the fishhold had melted and that the fishhold was filled with water to a level of approximately 18 inches. *Id.* ¶ 19. He then started bailing out the fishhold with a five-gallon bucket. *Id.* ¶ 20.

After observing water in the fishhold, Gary Thorbjornson set up two extra bilge pumps in the fishhold and then started steaming in to port. *Id.* ¶ 21. While steaming in to port, with the pumps running and Wilgus and Garrett Thorbjornson bailing, the water level in the fishhold continued to rise. *Id.* ¶ 22. The F/V SIRIUS began to list to port. *Id.* The list increased until trays of fish started sliding across the deck toward the port rail. *Id.* Gary Thorbjornson ordered the trays thrown overboard. *Id.* While Garrett Thorbjornson was doing so, the port rail became

_____

[1] The defendant qualifies this statement by noting that a diver went under the vessel to examine the hull and wheel and that Gary Thorbjornson cleaned out the bilge pump. Defendant's Responsive SMF ¶ 14.

submerged.  *Id*.  Eventually the F/V SIRIUS rolled onto her port side with her starboard side out of the water.  *Id*.

Gary Thorbjornson then radioed a mayday, passed one survival suit to Garrett through the wheelhouse door, and headed down forward to get additional survival suits.  *Id*.  Soon afterward, the entire stern of the vessel sank leaving the tip of the bow floating above the water.  *Id*.  The elapsed time from the time the bilge alarm went off until the time the vessel rolled onto her port side was about half an hour.  *Id*. ¶ 23.

The defendant has been unable to identify any act of negligence by Wilgus or Garrett Thorbjornson.  *Id*. ¶¶ 27-28.[2]

## B.  Discussion

The plaintiffs seek summary judgment on Count II of their complaints and on the affirmative defense of limitation of liability asserted by the defendant.  Plaintiffs' Motion for Partial Summary Judgment ("Summary Judgment Motion") (Docket No. 20) at 1.   Plaintiffs Wilgus and Garrett Thorbjornson seek summary judgment on the affirmative defense of comparative or contributory negligence.  *Id*.

The defendant responds that it "withdraws its assertion that the sinking of the vessel was caused or contributed to by the negligence of Plaintiffs David Wilgus and Garrett Thorbjornson." Defendant's Memorandum of Law in Opposition to Plaintiffs' Motion for Partial Summary Judgment ("Summary Judgment Opposition") (Docket No. 33) at 15.  Accordingly, Wilgus and

---

[2] The plaintiffs have submitted two paragraphs at the end of their responsive statement of material facts which they entitle "Additional Material Facts in response to the Defendant's Reply Statement of Facts."  Plaintiffs' Responsive SMF at 7.  There is no provision in Local Rule 56 for the moving party to file additional statements of fact after it has responded to the non-moving party's statement of material facts.  The plaintiffs did not request leave to file such additional information.  To allow its filing without providing the defendant with an opportunity to respond would be fundamentally unfair; to allow the defendant in turn to file yet another responsive document would be to prolong the summary judgment process inappropriately.  Paragraphs 65 and 66 of Docket No. 39 are stricken.

Garrett Thorbjornson are entitled to summary judgment on the second affirmative defense. Defendant's Answer to Complaint (Docket No. 5) at 4.[3]

    *1. Count II.*   Count II of the complaint asserts a claim of unseaworthiness under general maritime law.  Plaintiff's Complaint ("Complaint") (Docket No. 1) ¶¶ 19-22.[4]

> A claim based on unseaworthiness enforces the shipowner's absolute duty to provide to every member of his crew a vessel and appurtenances reasonably fit for their intended use.  The duty includes maintaining the ship and her equipment in a proper operating condition, and can be breached either by transitory or by permanent defects in the equipment. A temporary and unforeseeable malfunction or failure of a piece of equipment under proper and expected use is sufficient to establish a claim of damages for unseaworthiness.  Finally, the injured seaman must prove that the unseaworthy condition was the sole or proximate cause of the injury sustained.  Although the duty is absolute, the standard is not perfection, but reasonable fitness; not a ship that will weather every imaginable peril of the sea, but a vessel reasonably suitable for her intended service.

*Ferrara v. A. & V. Fishing, Inc.*, 99 F.3d 449, 453 (1st Cir. 1996) (citations and internal punctuation omitted).

The plaintiffs assert, in somewhat abbreviated fashion, that (1) "the undisputed evidence establishes that a leak of some type caused the fish[h]old of the F/V SIRIUS to flood"; (2) at the time the vessel started taking on water, "the weather was fair and well within the normal and expected weather conditions for a vessel of her type"; (3) the vessel took on water and eventually sank by the stern; (4) "[t]here can be no doubt that a vessel that leaks, swamps, and sinks in fair weather is not reasonably fit for its intended use"; and (5) therefore, the vessel was unseaworthy

---

[3] The answers were filed in each of the plaintiffs' separate cases before the cases were consolidated.  In Civil No. 08-227, brought by Garrett Thorbjornson, the second affirmative defense appears on page 3.  In Civil No. 08-228, brought by Tammy Thorbjornson as personal representative of the estate of Gary Thorbjornson, the second affirmative defense appears on page 6.  All are worded identically.

[4] This citation is to the complaint brought by David N. Wilgus in Civil No. 08-225.  Counts II of the complaints in Civil No. 08-227 and Civil No. 08-228 are essentially the same, with slight changes necessitated by the fact that Civil No. 08-228 is brought on behalf of the estate of a member of the vessel's crew.  All further citations to the complaint will be to the complaint in Civil No. 08-225, to which the other complaints are identical unless otherwise noted.

as a matter of law.  Summary Judgment Motion at 6.  This summary argument assumes too much.

First, "the presumption of unseaworthiness created by a sinking in calm waters is overcome by proof that the vessel was, in fact, seaworthy.  It may then be inferred that the sinking was due to some extraordinary, although unknown and unascertainable, peril of the sea." *Pace v. Insurance Co. of N. Am.*, 838 F.2d 572, 577 (1st Cir. 1988) (citation and internal punctuation omitted).  Second, the defendant disputes that the weather when the vessel went down was "fair" and "normal."  Plaintiffs' SMF ¶¶ 24-26; Defendant's Responsive SMF ¶¶ 24-26.[5]  While the defendant concentrates on the seaworthiness of the vessel at the time she put to sea on her last voyage rather than at the time of the events that led to her sinking, Summary Judgment Opposition at 7-10, which is the wrong point at which to determine seaworthiness for purposes of this case, *see, e.g., Gifford v. American Canadian Caribbean Line, Inc.*, 276 F.3d 80, 84 (1st Cir. 2002) (plaintiff who fell out of boat and then was injured need not show unseaworthiness of boat at time he was injured but only at time he fell); *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 549 (1960) (shipowner liable where unseaworthy condition arises after ship leaves port); *Franklin v. Doric Shipping & Trading Corp.*, 357 F.Supp. 1132, 1135 (W.D.La. 1972) (unseaworthiness is determined as of time of accident), there is enough evidence

---

[5] The defendant denies paragraph 24 of the plaintiffs' statement of material facts and denies and objects to paragraphs 25 and 26.  The plaintiffs contend that "the Defendant mischaracterized the contents of David Wilgus's sworn statement in order to do so" and directs the reader to their response to paragraph 62 of the defendant's statement of material facts.  Plaintiffs' Reply to Defendant's Objection to Plaintiff[]s['] Motion for Partial Summary Judgment ("Summary Judgment Reply") (Docket No. 40) at 2.  The defendant's denial and objections do not refer to Wilgus's statement, but rather to paragraph 62 of the defendant's statement of material facts.  The plaintiffs admitted paragraph 62 of the defendant's statement of material facts, Plaintiffs' Responsive SMF ¶ 62, which does cite Wilgus's statement.  The plaintiffs attempt to bolster their position on this point by citing to their purported "Additional Material Fact[s]" at the end of their response to the defendant's statement of material facts, but, as previously noted, I have stricken that material from the record.

in the summary judgment record with respect to the time of sinking,[6] if that evidence is admissible, to require the denial of the plaintiffs' motion on this issue.

The plaintiffs correctly identify this evidence as Simonitsch's proposed testimony, which they assume will be stricken from the summary judgment record as unsworn hearsay and/or in response to their motion under *Daubert*.  Summary Judgment Reply at 3-4.  Their reliance on their *Daubert* motion is misplaced, as I have ruled against them on that motion.  The only attempt by the defendant to include Simonitsch's opinions in the summary judgment record is paragraph 64 of its statement of material facts, which the plaintiffs deny and to which they object.  Plaintiffs' Responsive SMF ¶ 64.  Their first objection, that opinion testimony "does not belong in a statement of material facts," *id.*, is overruled.  The very authority cited by the plaintiffs for a later argument, *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990), establishes the contrary.  Their additional objection, that Simonitsch's opinions are inadmissible because he "failed to state the relative probabilities of" the two alternative possible causes of the sinking he suggests (striking a submerged object or a failure of the through-hull fittings), Summary Judgment Reply at 4, similarly relies on a nonexistent rule of law.

The plaintiffs' hearsay objection, however, is well taken.  The authority cited by the defendant for paragraph 64 of its statement of material facts is "Exhibit A attached to Attorney Savasuk's Affidavit."  Defendant's SMF ¶ 64.  Exhibit A to that affidavit (Docket No. 35) is the Defendant's Designation of Expert Witness dated November 26, 2008, and discussed above.  There is no affidavit or other sworn statement from Simonitsch himself.  Also attached to the

---

[6] At first blush, the First Circuit might be seen to have chosen a different standard in *Pace*, as the defendant suggests, Summary Judgment Opposition at 9, stating that "[t]he jury could have found . . . that the boat . . . was seaworthy when it put to sea, and that the sinking was therefore due to some unknown fortuitous event."  838 F.2d at 577.  However, as the plaintiffs point out, the issue in *Pace* was whether the vessel at issue was seaworthy at the time it put to sea, for purposes of coverage under a particular insurance policy.  *Id.* at 573.  I find the First Circuit's more recent opinion in *Gifford* more directly applicable to the circumstances present in the case at hand.

affidavit is a letter dated February 26, 2009, from Simonitsch to Savasuk, but again, that document is not sworn in any form.

The documents are hearsay, as the plaintiffs contend. "Expert opinion is admissible and may defeat summary judgment only where it appears that the *affiant* is competent to give an expert opinion." *Garside*, 895 F.2d at 50 (emphasis in original). As was the case in *Garside*, the substance of the expert's opinion on which the defendant wishes to rely was not verified by the expert. "A third party's description of an expert's supposed testimony is not suitable grist for the summary judgment mill." *Id.* Neither is an unattested letter sent by the expert to the attorney for the party seeking to rely on it. *See Brown v. Eastern Maine Med. Ctr.*, 2007 WL 2028983 (D. Me. May 9, 2007), at *5-*7.

In the absence of Simonitsch's opinions, therefore, the question is whether there is sufficient evidence that the F/V SIRIUS sank in weather conditions within or without those that might have been expected for a fishing vessel in its position at the relevant time. On this point, there is simply not enough evidence to allow the court to give the plaintiffs the benefit of the presumption of unseaworthiness, which otherwise would attach to the sinking of a vessel under weather conditions within those that might have been expected.

The critical factual allegations that would allow the plaintiffs to succeed on this basis were submitted too late to the summary judgment record and have been stricken. This includes the plaintiffs' attempts to demonstrate that the defendant's objection to paragraphs 25 and 26 of their statement of material facts were not well taken. Summary Judgment Reply at 2. It may well be that an expert is not necessary to testify that the weather conditions at the time the F/V SIRIUS sank were "normal and expected weather conditions for a ground fishing trawler fishing out of Port Clyde such as the F/V SIRIUS," Plaintiffs' SMF ¶ 25, but, given the defendant's

16

objection, it was incumbent upon the plaintiffs to deal with that objection directly, and not by choosing to offer an inappropriate second set of statements of material facts in the form of their "Additional Material Facts" at the end of their response to the defendant's statement of material facts.

On the showing made, the plaintiffs are not entitled to summary judgment on Count II of their complaints.

2. *Affirmative Defense of exoneration and/or limitation of liability*.   The defendant's answers to the three complaints in this action all assert, as a seventh affirmative defense: "Defendant is entitled to exoneration and/or limitation of liability pursuant to 46 U.S.C. § 183 *et seq*."  Defendant's Answer to Complaint (Docket No. 5) at 4.  The defendant's memorandum of law refers in this regard to 46 U.S.C. § 30505, Summary Judgment Opposition at 10, which is apparently the correct current citation.

That statute provides, in pertinent part: "[T]he liability of the owner of a vessel for any claim, debt, or liability . . . shall not exceed the value of the vessel and pending freight."  46 U.S.C § 30505(a).

> If the owner-friendly Limitation of Liability Act is viewed as an exception to the rule of absolute liability for unseaworthiness, there is an exception to the exception: this limitation applies only if the shipowner lacked "privity or knowledge" of the act or condition that caused the injury.  "Privity or knowledge" can be actual or constructive.  Either way, the term usually implies some degree of culpable participation or neglected duty on the shipowner's part; that, for example, it committed a negligent act, or knew of an unseaworthy condition but failed to remedy it, or through the exercise of reasonable diligence could have prevented the commission of the act or the onset of the condition.

*Carr v. PMS Fishing Corp.*, 191 F.3d 1, 4 (1st Cir. 1999) (citations omitted).  Further,

> LOL [Limitation of Liability] proceedings lend themselves to a bifurcated analysis.  First, the court must determine whether negligence or unseaworthiness caused the accident.   Second, the court must

17

> determine whether the shipowner was privy to, or had knowledge of, the
> causative agent (whether negligence or unseaworthiness).
>
>                     * * *
>
>     LOL proceedings engender a divided burden of proof.  The claimant
> bears the initial devoir of persuasion vis-à-vis negligence and
> unseaworthiness.  If the claimant succeeds in that first-stage endeavor,
> the burden then shifts to the shipowner to establish its lack of privity and
> knowledge.

*Id.*  (citations omitted).

In this case, the plaintiffs apparently assume that their motion for summary judgment on unseaworthiness will be granted, because they address only the second part of the analysis. Summary Judgment Motion at 6-8.  That assumption is fatal to their argument, as I have recommended that summary judgment not be entered on that claim.  *See Brown v. Teresa Marie IV, Inc.*, 477 F.Supp.2d 266, 274 (D. Me. 2007) ("At this point, the Court is unable to state with specificity what caused the accident with the F/V Teresa Marie IV, which prevents the Court from moving to the second stage of the [LOL] analysis.")  Even if the result on the first part of the "LOL" test were different, however, the plaintiffs have failed to show that the defendant cannot prove the second part of the test.

The plaintiffs assert that the defendant "cannot meet its burden of proving its lack of privity or knowledge" because:

> There was a serious leak on the previous trip that was not repaired, and
> which recurred and sunk the vessel on the trip in question.  The vessel
> was thus in an unseaworthy condition at the beginning of the trip.  The
> Defendant is charged with knowledge of the existence of that condition.

Summary Judgment Motion at 8.  They do not cite to any record support for these factual assertions, but I assume they mean to refer to paragraphs 6-14 of their statement of material facts, because those are the paragraphs cited in support of the relevant statements in the section of their memorandum entitled "Introduction and Facts."  *Id.* at 2-3.

18

The plaintiffs must be aware that the defendant has denied each of those paragraphs in their statement of material facts that would actually support the factual assertions quoted above. Defendant's Responsive SMF ¶¶ 7-11.  Indeed, the defendant objected to paragraph 11 of the plaintiffs' statement of material facts because it lacks a pinpoint citation to the authority cited. *Id*. ¶ 11.  That objection is sustained; the paragraph is stricken.

Under these circumstances, the plaintiffs' contention that the defendant cannot prove its lack of privity or knowledge is based at best on disputed material facts, which means that the plaintiffs are not entitled to summary judgment on the limitation of liability or "exoneration" affirmative defense, on the showing made.

### III.  Conclusion

For the foregoing reasons, (1) the plaintiffs' motion to exclude the testimony of the defendant's expert witness, James T. Simonitsch, is **DENIED**, and (2) I recommend that the plaintiffs' motion for partial summary judgment be **GRANTED** as to the affirmative defense of contributory or comparative negligence insofar as that affirmative defense is asserted against plaintiffs David N. Wilgus and Garrett Thorbjornson, and otherwise **DENIED.**

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within ten (10) days after being served with a copy thereof.  A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 14th day of May, 2009.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge