UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| **DAVID N. WILGUS** AND<br>**GARRETT THORBJORNSON** AND<br>**THE ESTATE OF GARY**<br>**THORBJORNSON**,<br><br>      **PLAINTIFF**<br><br>v.<br><br>**F/V SIRIUS, INC.**,<br><br>      **DEFENDANT** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  **CIVIL NO. 08-225-P-H**<br>)<br>)<br>)<br>) |

## ORDER DENYING PLAINTIFFS' MOTION FOR A NEW TRIAL ON THE GROUNDS OF JUROR MISCONDUCT

The issue here is whether juror access to extraneous information on the Internet supports a motion for a new trial. Since the plaintiffs have been unable to show that the information reached any member of the jury during the trial or deliberations, the motion is **DENIED**.[1]

### FACTS

Four days after the jury returned a defense verdict on the plaintiffs' claims for personal injury and wrongful death, the plaintiffs' lawyer received an e-mail from one of the jurors. The juror's e-mail stated:

---

[1] Previously, I denied the other parts of the plaintiffs' Motion for New Trial (Docket Item 116). Order Denying Mot. for New Trial (Docket Item 119). The juror's e-mail is a newly discovered fact that, given my Kepreos Order (Docket Item 112), the plaintiffs could not properly investigate in time to file a Rule 59 motion under that Rule's time limits. I have therefore considered the juror misconduct claim. Federal Rule of Civil Procedure 60(b)(2) requires that a motion be filed within a "reasonable time" not more than a year from the entry of judgment. See United States v. One Urban Lot, 882 F.2d 582, 585 (1st Cir. 1989) ("[B]ecause of the functional similarity between the rules, courts have treated untimely Rule 59 motions as filed under Rule 60." (quoting Jackson v. Schoemehl, 788 F.2d 1296, 1298 (8th Cir. 1986)).

> [D]id you know your plaintiff[s] advocated the use of mushrooms and weed smoking, and binge drinking all over the internet? . . . It[']s really sad what happened but with all the work going into this don[']t you think you should have address[ed] this issue and known such things so they could clean up their acts before court?  I'm just trying to help.[] [I]f you want more info and insight [I] will help you.

Ex. A to Pls.' Mot. to Conduct Post-Trial Voir Dire of Juror #45 (Docket Item 115-2).  The lawyer promptly filed a notice of juror contact with the court along with a copy of the e-mail redacted to protect the juror's identity.  Id.  He also shared the e-mail with the defendant's lawyer, id., and filed a Motion to Conduct Post Trial Voir Dire of the juror (Docket Item 115).  The defendant's lawyer responded to the motion.

## MY INVESTIGATION

When confronted with an allegation of juror misconduct, a trial judge must first determine if it is non-frivolous.  See United States v. Mikutowicz, 365 F.3d 65, 75 (1st Cir. 2004) ("[M]isconduct allegations that 'are frivolous . . . do not trigger any duty of inquiry.'" (quoting Neron v. Tierney, 841 F.2d 1197, 1202 n.6 (1st Cir. 1988)).  If the allegation is colorable, then the judge must "undertake an adequate inquiry to determine whether the alleged incident occurred and if so, whether it was prejudicial." United States v. Bristol-Martir, 570 F.3d 29, 42 (1st Cir. 2009) (quoting United States v. Barone, 114 F.3d 1284, 1307 (1st Cir. 1997)).[2]  Here, the juror's e-mail presented a colorable claim of juror misconduct triggering

---

[2] Citing the need to protect jurors from undue impositions, the First Circuit has left the determination of "the extent and the type of investigation" to the discretion of the investigating district court judge.  United States v. Gaston-Brito, 64 F.3d 11, 13 (1st. Cir. 1995); see also United States v. Boylan, 898 F.2d 230, 258-59 (1st Cir. 1990) (abjuring "rigid" rules for investigations of juror misconduct and describing an adequate inquiry as "commensurate to the gravity of the charge and the seriousness of the task: patient, careful, searching, thorough, methodologically sound").

my duty to investigate. While the e-mail did not say explicitly that the juror considered information from the Internet during the trial, that was certainly a possible interpretation. (I had explicitly told the jury more than once not to do research about the case or the parties on the Internet, explaining why it would be unfair.) The extraneous information could reasonably have prejudiced a hypothetical average juror.[3] I concluded, therefore, that the plaintiffs had raised a "non-frivolous" claim. Following the preferred practice in the First Circuit, I arranged to confer with the lawyers for the parties about how to proceed. See, e.g., Boylan, 898 F.2d at 259; Barone, 114 F.3d at 1307; United States v. Meader, 118 F.3d 876, 880 (1st Cir. 1997); United States v. Bradshaw, 281 F.3d 278, 290 (1st. Cir. 2002).

The First Circuit has held that non-frivolous suggestions of jury misconduct deserve "full investigation," Gaston-Brito, 64 F.3d at 13, carried out through a "painstaking investigatory process [that] protects the [parties'] constitutional right to an unbiased jury." United States v. Lara-Ramirez, 519 F.3d 76, 86 (1st Cir. 2008) (citing Bradshaw, 281 F.3d at 289-90). First, the trial judge must "ascertain whether the alleged jury misconduct actually occurred." Gaston-Brito, 64 F.3d at 13 (quoting United States v. Doe, 513 F.2d 709, 711-12 (1st Cir. 1975)).[4]

---

[3] If a judge finds that a taint-producing event in fact occurred, the judge must assess its probable effect on an average juror without regard, given the strictures of Rule 606(b), for the event's *actual* effect on particular jury deliberations. See Boylan, 898 F.2d at 262 ("[T]he criterion for a 'post-verdict determination of extra-record prejudice must be an objective one, measured by reference to its probable effect on a hypothetical average juror.'" (quoting United States v. Calbas, 821 F.2d 887, 896 (2d Cir. 1987)); Mahoney v. Vondergritt, 938 F.2d 1490, 1492 (1st Cir. 1991) (holding that prejudice must be determined from the "objective perspective" of whether extraneous information or influence "was likely to have affected the jury's verdict").

[4] The judge is not free, however, to engage in a wide-ranging and exhaustive investigation, probing
*(continued next page)*

In preparing for my conference with the lawyers, I discovered that an anonymous post-verdict response to a questionnaire from a juror in the case stated that one of the plaintiffs "was a party drug [illegible] animal." Juror Eval. Form (Attachment 2 to Juror Info. Form (Docket Item 131 *SEALED*) (Docket Item 131-3 *SEALED*)). The handwriting was similar to the handwriting on the pre-jury selection survey form that the e-mailing juror had completed. I shared this information with the parties' lawyers, and sought their input about how to question the juror and what questions to ask.

After listening to their proposals, I decided that, to protect the juror from undue impositions as well as to minimize advance preparation by the juror, I would have the juror summoned using a regular jury summons sent through the mail without divulging the purpose. I decided that I would allow the parties' lawyers to be present during my meeting with the juror but would not allow them to participate directly in the questioning. Rather, after an initial set of questions, I would temporarily excuse the juror and allow the lawyers to suggest follow-up

---

every questionable incident and turning over every stone to root out possible jury taint. The inquiry must be "limited to only what is absolutely necessary to determine the facts with precision." Boylan, 898 F.2d at 259 (quoting United States v. Ianniello, 866 F.2d 540, 544 (2d Cir. 1989). In particular, the inquiry is limited by Federal Rule of Evidence 606(b), which states, in relevant part:
> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith. But a juror may testify about . . . whether extraneous prejudicial information was improperly brought to the jury's attention.

Fed. R. Evid. 606(b). Under Rule 606(b), "inquiry into the motives of individual jurors and conduct during deliberations is never permissible." Vondergritt, 938 F.2d at 1492. Questioning of jurors "must focus solely" on whether the jury was improperly aware of extraneous prejudicial information or exposed to external influences. Id.

questions. I also proposed to summon the jury foreperson for confirmatory questioning using the same methodology. The parties agreed.

Accordingly, I conducted separate voir dires in chambers of the jury foreperson and the juror who e-mailed the plaintiffs' counsel. The lawyers for the parties were present throughout the questioning and had opportunities to propose follow-up questions for both jurors.

Because the juror who e-mailed was delayed in arriving, I questioned the jury foreperson first. The foreperson recalled no discussion of material from the Internet by members of the jury.

> THE COURT: Okay. Do you remember any juror reporting any information about either of the plaintiffs . . . about personal characteristics, things that the juror might have learned from a Facebook page or from other information on the Internet?
> THE FOREPERSON: No, that I would have recalled. I -- when we went into the jury room, we talked about mundane things, i.e., the weather, kids, sports, but I honestly do not recall any conversation as it related to the case or any parties related to the case or any of the attorneys or the family.
> THE COURT: Was there any reference by anyone to pictures that they had seen on the Internet of either of the two male plaintiffs, the young men?
> THE FOREPERSON: No, no.[5]

The parties' lawyers proposed no follow-up questions for the foreperson.[6]

I then questioned the juror who sent the e-mail. I first confirmed with the juror that he had in fact sent the e-mail, by showing him a copy. I then asked what information the juror found on the Internet. He responded:

> After the jury duty was over and the case was decided, I did the research that you said we couldn't do during the case, but did after and then I found everything that I wrote here [in the

---

[5] The parties did not request an official transcript. The questions are from a rough-draft transcript that I requested from the court reporter and are consistent with my own notes.
[6] Instead, the plaintiffs' lawyer conceded that the foreperson apparently had not heard or considered extraneous information from the Internet during the trial or deliberations.

5

> e-mail] was true. I was very upset because obviously, you know, a stressful week and not having that experience, I was very upset that -- come to find this out, so obviously I lashed out that it was inappropriate.

The juror explained that he had found information about two of the plaintiffs on the social networking site, Facebook. The juror said that he gained access to those plaintiffs' Facebook pages by sending "friend" requests, which the plaintiffs apparently accepted. On the two plaintiffs' Facebook pages, the juror said that he found pictures that provoked the allegations in his e-mail. The juror insisted that he had discovered the photographs "a day or two after . . . it was all over" or "a few more days than that." He said that he did not otherwise contact or communicate with the plaintiffs. Asked if he believed that any other juror was aware of the information on Facebook, the juror responded, "Absolutely not. It was never discussed behind the closed doors." I then temporarily excused the juror to allow the lawyers to propose additional questions. I then called the juror back and asked specifically about the offer of information and insight his e-mail had proposed. The juror responded:

> I just meant if you're going to take on a client like that and it's going to be the severity of the issue like it is, wouldn't you dig deeper and know who these people are before, you know, putting them, you know, on-the-spot like that, having them up there. I feel like their character, that you would know about somebody and even as an acquaintance, you would know that. . . . I meant if you didn't know anything about these people, I could have told him you can go to Facebook and see this, you know, see that information if you want online after.

I asked whether it would have made any difference if the plaintiffs' lawyer had known of the Facebook pages earlier and had arranged to have the Facebook information removed before trial. The juror stated emphatically, "No, absolutely not because I wasn't aware of it during the time." I then asked the juror about his

6

response in the post-verdict juror questionnaire, associating one of the plaintiffs with partying and drugs. Curiously, he could not state whether or not the handwriting was his. Neither could he remember writing the statement. He did admit researching the lawyers in the case but insisted that no research had been done until "few days" after the trial. At that point, with the lawyers' agreement, I excused the juror.

Next, I called the foreperson back for some final questions. Then for the first time, I showed the foreperson the other juror's e-mail (but not his identity). The information in it did not spur her to remember anything further. I also told the foreperson about the characterization of one plaintiff on the written response to a juror questionnaire. That also failed to provoke any memory of discussions of extraneous material or information during deliberations. Finally, I returned to the issue of information from Facebook. The foreperson remembered that someone on the jury had wondered aloud whether the plaintiffs had Facebook pages but that "nothing else came of that." After another brief break during which the plaintiffs' lawyer suggested follow-up questions for the foreperson, I asked the foreperson if she could remember when the other unknown juror had asked about Facebook. To the best of the foreperson's memory, the question had been posed during the first day of deliberations, the day before the jury reached a verdict. I then excused the foreperson.

## ANALYSIS

On the record before me, I cannot conclude that, *during the trial or deliberations*, the juror who sent the e-mail discovered the extraneous information he mentions. While some of the juror's answers to my questions, particularly his

7

uncertainty about his handwriting, are troubling, I have no basis for finding him untruthful in answering the one key question—*when* he discovered the information. To be sure, the foreperson remembered a member of the jury mentioning Facebook during deliberations, but the foreperson, who was credible and forthright,[7] stated that nothing further came of that discussion. The foreperson also had no memory of any discussion in the jury room of alcohol or drug use by any of the plaintiffs. Id.  Under these circumstances, I see no reason to summon other jurors (and the lawyers did not request me to do so) to inquire about extraneous information reaching the jury.

Accordingly, having found no evidence that juror misconduct actually occurred, I **DENY** the plaintiffs' motion for a new trial.

**SO ORDERED.**

**DATED THIS 27TH DAY OF OCTOBER, 2009**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**

---

[7] The plaintiffs' lawyer described her as "credible and . . . very clear."

8